**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| GRYNBERG *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 07-cv-1490 (JR) |
| v. | ) | |
| | ) | |
| ELIE DOTE *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT CHERRY'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendant Earl Cherry ("Cherry") moved to dismiss Plaintiffs' First Amended Complaint
("Complaint") for lack of personal jurisdiction and improper venue.  This Court should deny that
motion because Plaintiffs alleged facts sufficient to serve as the basis for jurisdiction.
Specifically, the Complaint alleges Cherry transacted business in the District.  The Complaint
also alleges Cherry participated in a conspiracy with Ambassador Touaboy, who resides in this
District.  This conduct, standing alone, suffices to support jurisdiction.  The exercise of
jurisdiction over Mr. Cherry, an international businessman, does not violate his due process
rights. This Court should also deny Mr. Cherry's motion alleging lack of venue because a
substantial part of the events giving rise to the claims occurred in the District of Columbia.  In
the alternative, were the Court to contemplate dismissal, this Court should permit Plaintiffs to
take a limited amount of jurisdictional discovery to establish additional jurisdictional evidence,
including evidence that Mr. Cherry traveled on at least one occasion and likely more to this
District in order to procure a visa from the Central African Republic Embassy.

## STATEMENT OF FACTS

In 1999, Plaintiffs obtained a concession from the Central African Republic Ministry of Energy, Mines and Hydraulics, a political department of the Central African Republic government. The Central African Republic's costs of negotiating that concession were paid in part by the U.S. Department of State in Washington, D.C. *Complaint ¶14.* After a coup, a new government came into power, and activity on the concession has been stalled by the declaration of a force majeure due to civil unrest in the area of the concession. *Complaint ¶30.* The Complaint alleges that the Central African defendants, current government officials of the Central African Republic, together with Mr. Cherry, engaged in a civil conspiracy to extract bribes from the plaintiffs, and to unlawfully interfere with and/or deprive plaintiffs of their contractual right to develop oil and natural gas resources in the Central African Republic. *Complaint ¶¶66-87.*

One of the co-conspirators, Defendant Emmanuel Touaboy, is the Central African Republic's Ambassador to the United States. He conducts business at the Embassy for the Central African Republic, located at 1618 22nd Street, NW, Washington D.C. 20008. *Complaint ¶6.* As described in the complaint, Ambassador Touaboy has contacted other co-conspirators and conducted meetings related to the conspiracy at the Hamilton Crowne Plaza Hotel in Washington D.C. *Complaint ¶53.*

In September 2005, Ambassador Touaboy personally demanded trade secrets valued in excess of $22 million from plaintiff RSM in order retain its contractual rights in Central African Republic. *Complaint ¶57.* Ambassador Touaboy also demanded a large monetary payment from Plaintiff Jack Grynberg, President and CEO of Plaintiff RSM, before Defendants President

Françoise Bozizé Yangouvonda and Minister Sylvain N'Doutingai. *Complaint ¶58.* Mr. Grynberg categorically refused both requests. *Id.*

On October 25, 2006, Mr. Grynberg received a telephone call from Mr. Cherry. *Complaint ¶66.* Mr. Cherry informed Mr. Grynberg that he had helped the Central African Republic purchase a used C130 plane, and his pilots and mechanics were operating it in and on behalf of Central African Republic government. Mr. Cherry stated that he was looking for business, and was dealing directly with President Bozizé and Ambassador Touaboy. When Mr. Grynberg informed him that he was having problems with the government, Mr. Cherry offered to facilitate the payment of personal bribes to President Bozizé and Ambassador Touaboy. Mr. Grynberg refused the offer. *Complaint ¶66.*

Mr. Cherry employed this business in part as a front and money laundering operation for the collection of bribes as part of a conspiracy with and on behalf of the other defendants in this action, which conspiracy included the solicitation of a bribe from Plaintiffs. *Complaint ¶66.* As part of this scheme, Mr. Cherry was "dealing directly" with Ambassador Touaboy in the District of Columbia. *See Complaint at ¶66.*

As a result of Mr. Grynberg's refusal to pay the requested bribes, the defendants have taken steps to prevent Mr. Grynberg and his company from working pursuant to the lawfully granted concession and sought out other parties for issuance of a new concession, in effect attempting to transfer Mr. Grynberg's exclusive concession to a third party. *Complaint ¶¶38, 47-48.*

## ARGUMENT

## I.     THIS COURT HAS JURISDICTION OVER MR. CHERRY PURSUANT TO THE DISTRICT OF COLUMBIA LONG ARM STATUTE

### A.  MR. CHERRY TRANSACTED BUSINESS IN THE DISTRICT OF COLUMBIA.

Mr. Cherry has been transacting business in the District of Columbia related to the claims in this case, and for this reason he is subject to the reach of the District of Columbia long arm statute.  The D.C. long-arm statute provides that "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to claims for relief arising from the person's … transacting *any* business in the District of Columbia."  D.C.St. § 13-423(a)(1) (emphasis added).

In his affidavit, Mr. Cherry alleges that he does not currently transact business in the District of Columbia.  This, however, is not the relevant question.  The correct question is whether Mr. Cherry ever transacted "any business" in the District of Columbia and whether the claims presented in fact arise from Mr. Cherry's transacting business in D.C.

Whether Mr. Cherry "dealt with" Ambassador Touaboy by meeting him personally, by telephone, or by e-mail, his contacts with him constitute "transacting business" with the District under the long-arm statute.  *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511 (D.C. Cir. 2002) ("transactions by mail and telephone [can] be the basis for personal jurisdiction notwithstanding the defendant's lack of physical presence in the forum.  There is no logical reason why the same should not be true of transactions accomplished through the use of e-mail"); *Neal v. Janssen,* 270 F.3d 328, 332 (6th Cir. 2001) (holding that "making phone calls and sending facsimiles into the forum" may be sufficient to confer specific jurisdiction); *Oriental Trading Co. v. Firetti,* 236 F.3d 938, 943 (8th Cir. 2001) (same).  Mr. Cherry's actions, standing

alone, are sufficient to satisfy the requirements of the D.C. long-arm statute and confer this court

personal jurisdiction over Mr. Cherry in this action.

### B.  MR. CHERRY PARTICIPATED IN THE CONSPIRACY BY COMMUNICATING DIRECTLY WITH A D.C.-BASED CO-CONSPIRATOR.

Under well established precedents, a plaintiff can establish personal jurisdiction pursuant

to the District of Columbia long arm statute (D.C. Code § 13-423(a)) over defendants who

participate in a conspiracy connected to the District of Columbia.  To succeed in establishing so-

called "conspiracy jurisdiction," plaintiffs must first make a *prima facie* showing of conspiracy.

*Second Amendment Foundation v. United States Conference of Mayors*, 274 F.3d 521, 524 (D.C.

Cir. 2001).  This requires allegations of a conspiracy: (1) an agreement between two parties (2)

to participate in an unlawful act, (3) injury caused by the unlawful act of one of the co-

conspirators, and (4) the injury causing overt act was done pursuant to and in furtherance of a

common scheme.  *Id.* (citing *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir. 1983)).  The

plaintiffs must also allege acts connecting the co-conspirators with the forum.  *Second*

*Amendment Foundation*, 274 F.3d at 524;  *First Chicago Int'l. v. United Exch. Co.*, 836 F.2d

1375, 1378 (D.C. Cir. 1988).  However, the conspiracy jurisdiction test "does not demand that a

contact be specifically alleged for each non-resident defendant."  *Edmond v. United States Postal*

*Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991).  Rather, for jurisdictional purposes, the

plaintiff must allege: (1) a conspiracy (2) in which the defendant participated and (3) a co-

conspirator's overt act within the forum, subject to the long-arm statute and in furtherance of the

conspiracy. *Jung v. Ass'n of American Med. Colls.,* 300 F.Supp.2d 119, 141 (D.D.C.2004).[1]

---

[1] "The District of Columbia long-arm statute provides for jurisdiction over persons acting directly and their agents, D.C. Code § 13-423(a)," and "courts deem the defendant's co-conspirator the defendant's agent."  *Youming Jin v. Ministry of State Sec.*, 335 F.Supp.2d 72, 78-

The complaint meets all of these requirements.  It alleges a conspiracy: an unlawful agreement among the defendants to extract bribes from Plaintiffs, and deprive the plaintiffs of their contractual rights and business opportunities because of their refusal to pay unlawful bribes and commit a criminal act.   Mr. Cherry's October 25, 2006 bribe solicitation and conversation with Mr. Grynberg demonstrates his participation in the conspiracy.  One of the co-conspirators, Ambassador Touaboy, resides and conducts his regular business in the District of Columbia-- specifically, the Central African Republic Embassy--and has performed multiple overt acts in furtherance of the conspiracy there.[2]   Mr. Cherry "dealt directly" with Ambassador Touaboy as part of the conspiracy, and also conducted meetings related to the concession elsewhere in the District.  Given the actions of Mr. Cherry and Mr. Cherry's co-conspirators, the complaint contains sufficient factual basis for finding that personal jurisdiction exists in this court over Mr. Cherry under a conspiracy theory.

## C.  THIS COURT'S EXERCISE OF PERSONAL JURISDICTION OVER MR. CHERRY DOES NOT VIOLATE HIS DUE PROCESS RIGHTS.

Under either the "transacting any business" test or a conspiracy theory, the exercise of personal jurisdiction over Mr. Cherry would comport with due process.  As admitted by Mr. Cherry, the D.C. long arm statute provision granting jurisdiction over those "transacting any business in the District of Columbia" is given an expansive interpretation "coextensive with the

---

79 (D.D.C. 2004) (citing *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997)).

[2] The fact that Ambassador Touaboy's place of business is an embassy is of no import.  The premises of a foreign embassy are considered within the territorial jurisdiction of the United States."  *El-Hadad v. Embassy of the United Arab Emirates*, 69 F.Supp.2d 69, 75 n.5 (D.D.C. 1999) (court has personal jurisdiction over Embassy of the United Arab Emirates), *rev'd on other grounds*, 216 F.3d 29 (D.C.Cir. 2000).  *See also Fatemi v. United States,* 192 A.2d 525 (D.C.1963) (holding that "a foreign embassy is not to be considered the territory of the sending state"); Restatement (Third) of Foreign Relations § 466, comment a (1987) ("That premises are inviolable does not mean that they are extraterritorial. Acts committed on those premises are within the territorial jurisdiction of the receiving state ....").

due process clause." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C.Cir. 1995); *Crane v. Carr*, 814 F.2d 758, 762 (D.C.Cir. 1987). The Due Process Clause is intended to provide a "degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980). Due process, however, requires far less than physical presence in the jurisdiction. As the Supreme Court held in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), it is an "inescapable fact of modern life that a substantial amount of business is transacted solely by mail and wire communications across state lines." *Burger King*, 471 U.S. at 476.[3]

By joining the conspiracy, Mr. Cherry purposefully established "minimum contact with the [District of Columbia]" such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Mr. Cherry's statement that he was dealing directly with Ambassador Touaboy, immediately before he solicited a bribe from Mr. Grynberg, indicates that he was aware of and assented to his co-conspirators' acts in the forum. *Cf. Youming Jen v. Ministry of State Sec.*, 335 F.Supp.2d 72, 83 (D.D.C. 2004) (holding that plaintiffs' allegations did not show personal jurisdiction because they failed "to show the defendant had *any* knowledge, control, approval or discretion" over the conspirators' acts within the forum).

Mr. Cherry's arguments regarding the District of Columbia's lack of interest in this litigation ignore substantial interests of the District in seeing that these claims be fully addressed.

---

[3] As the claims here arise from the identified contacts, Plaintiffs assert that specific jurisdiction rather than general jurisdiction exists as to Mr. Cherry. *See generally Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511 (D.C. Cir. 2002) (discussing differences between general jurisdiction and specific).

.

The federal government, seated in Washington, D.C., made Washington a preferred forum for claims such as those presented in this case arising under the Foreign Sovereign Immunities Act ("FSIA").  See 28 U.S.C. §1391(f)(4) (identifying Washington, D.C. as a default forum for claims arising under the FSIA). The District of Columbia's interests are best judged by whether in fact Mr. Cherry's actions come within the scope of D.C.'s long-arm statute.  By transacting business in this district, and by conspiring with co-defendants in this district, Mr. Cherry interjected himself into the affairs of the district. As shown above, Mr. Cherry's acts, and the acts of his co-conspirators, give D.C. a significant interest in this action.

Similarly, Mr. Cherry's claims regarding burden are unsupported.  By all accounts, Mr. Cherry operates a far flung business empire, with businesses of which Plaintiffs are aware in Louisiana, Ohio and, as detailed in the complaint, in Africa as well.  He faces little if any comparable burden in defending this action in the District of Columbia.

## II.    VENUE IS PROPER IN THIS DISTRICT PURSUANT TO 28 U.S.C. §1391(b) BECAUSE A SUBSTANTIAL PART OF THE EVENTS GIVING RISE TO THE CLAIM AROSE HERE.

Mr. Cherry's efforts to dismiss the action for improper venue primarily focus on the other defendants, not on the propriety of suit against him in this court.  Examining his acts in this forum, and the acts of his co-conspirators for which he can be held accountable, it is clear that venue is proper before this court.  Mr. Cherry's motion to dismiss based on improper venue should be denied.

As a general matter, the plaintiffs' choice of forum is allowed substantial deference.  *See Shapiro v. Hazard,* 24 F.Supp.2d 66, 71 (D.D.C. 1998).  Under 28 U.S.C. §1391(b), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred."[4]  Venue is proper if a substantial part of the events giving rise to the claims

occurred in the District of Columbia, regardless of whether other districts have a connection to

the case, even if that connection is a more substantial connection.  *FC Investment Group v.*

*Lichtenstein*, 441 F.Supp.2d 3, 11 (D.D.C. 2006) (citing, among others, *Setco Enterprises Corp.*

*v. Robbins,* 19 F.3d 1278, 1281 (8th Cir. 1994)).  In making this determination, "a court should

not focus only on those matters that are in dispute or that directly led to the filing of the action,"

but should review "the entire sequence of events underlying the claim."  *FC Investment Group,*

441 F.Supp.2d at 11 (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). [5]

    As noted regarding jurisdiction over Mr. Cherry, the complaint alleges that a substantial

part of the events giving rise to the claims occurred in the District of Columbia.  Mr. Cherry and

the co-defendants conducted numerous events related to Plaintiffs' claims in the District of

Columbia.  On September 26, 2005, Michael Coulter of United Reef, Plaintiff's business partner

in Central African Republic, met with then Minister of Finance and Budget of Central African

Republic, Theodore Dabanga, and Defendant Touaboy at the Hamilton Crowne Plaza in

---

[4] 28 U.S.C. §1391(b) is the applicable section of the general venue statute, as this action would
not be based solely on diversity of citizenship. *See Concessionaria DHM v. International*
*Finance Corporation*, 307 F.Supp.2d 553, 558 (S.D.N.Y 2004).  The claims against the Central
African Republic defendants arise under the Foreign Sovereign Immunities Act, and service of
process on these defendants pursuant to that statute is ongoing.

[5] Mr. Cherry's motion addresses the propriety of venue as it relates to the Central African
Republic defendants, but none of that discussion is relevant to venue as it relates to Mr. Cherry
and is not addressed here.  Admittedly, the venue allegations in the Complaint at ¶ 9 are directed
to the Central African Republic Defendants.  This, however, is immaterial.  Plaintiffs need not
identify all bases for proper venue in the complaint, and the court may consider other bases even
if not specifically included in the pleading.  *See Simon v. Ward*, 80 F.Supp.2d 464 (E.D.Pa.
2000).  In contrast to pleading requirements for jurisdiction, plaintiffs are not required to include
in the complaint allegations showing that venue is proper in the district in which the suit has
been brought.  *See Fed.R.Civ.P., Adv. Comm. Notes to Form 2*, at ¶ 3 ("Since improper venue is
a matter of defense, it is not necessary for plaintiff to include allegations showing the venue to be
proper.");  *15 Wright & Miller, Federal Practice & Procedure, at §3826.*  Thus, the fact that
plaintiffs did not specify in this complaint that venue could also be found proper under 1391(b)
does not impact the analysis of whether venue as to Mr. Cherry is proper in this district.

Washington, D.C. *See Amended Complaint,* ¶53. The purpose of the meeting was to discuss Central African Republic's behavior regarding the Plaintiff's concession. *Id.* Defendant Touaboy, the Central African Republic Ambassador to the United States, is based in Washington, D.C. *Id.* at ¶6. He initiated numerous contacts with Plaintiffs regarding the concession. *Id.* at ¶¶57, 58. Mr. Cherry stated that he was in direct contact with Ambassador Touaboy, resident in D.C., regarding the very scheme which led Mr. Cherry to seek bribes from Plaintiffs. These activities within the District of Columbia are sufficiently substantial to support venue in the District. *See, e.g., U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.,* 241 F.3d at 153-54 (finding venue proper in New York where non-forum defendant directed communications to New York during the negotiation of the charter party at issue); *Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 868 (2nd Cir. 1992) (venue proper as plaintiff's receipt of a collection notice within the district was a substantial part of the events giving rise to a claim under the claim); *FC Investment Group,* 441 F.Supp.2d at 12 (venue proper in District of Columbia where non-forum defendant directed communications to plaintiff's District office) *Sacody Techs., Inc. v. Avant, Inc.,* 862 F.Supp. 1152, 1157 (S.D.N.Y.1994) (§1391(a)(2) "substantial part" requirement satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action).

Mr. Cherry suggests that venue could also be found in the District of Louisiana. Even assuming this allegation to be true, it does not support a finding that venue in the District of Columbia is improper. As noted in *FC Investment Group v. Lichtenstein,* 441 F.Supp.2d 3, 11 (D.D.C. 2006), the venue statute, amended in 1990, no longer requires a court to determine the "best district," or the district with the "most significant" connection to the claim, and recognizes

that there can be more than one district in which a substantial part of the events giving rise to the claim occurred. *See generally Wright & Miller, Federal Practice and Procedure §3806 (1994 Supp.).* In this case, relevant events occurred in at least four states and several foreign countries. But that fact alone does not throw into question proper venue in the District of Columbia. Examining "the entire sequence of events underlying the claim," the facts here do not support the identification of Louisiana as the only venue in which this case could proceed, and do not require dismissal of this case based on defects in venue.

### III.    IF NEEDED, PLAINTIFFS SHOULD BE GRANTED LIMITED JURISDICTIONAL DISCOVERY.

If this Court is not willing to exercise jurisdiction based on the above allegations, Plaintiffs should be granted jurisdictional discovery to establish facts supporting the jurisdictional claims. It has been held that it is an abuse of discretion to deny jurisdictional discovery where the plaintiff has specifically alleged: (1) the existence of a conspiracy, (2) the nonresident's participation, and (3) an act coming within the scope of the D.C. long-arm statute. *See Edmond v. U.S. Postal Service General Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991). Courts in this circuit have liberally granted leave to plaintiffs to take jurisdictional discovery. *See, e.g., GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000) ("This court has previously held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified. . . . We cannot tell whether jurisdictional discovery will assist [plaintiff] on this score, but it is entitled to pursue precisely focused discovery aimed at addressing matters relating to personal jurisdiction."); *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996) ("A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts

with the forum."); *Crane v. Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987) (vacating judgment based on lack of opportunity to conduct discovery on the issue of personal jurisdiction and citing numerous authorities); *Diamond Chem. Co. v. Atofina Chems., Inc*., 268 F. Supp. 2d 1, 15 (D.D.C. 2003) (granting jurisdictional discovery for facts supporting application of the D.C. long-arm statute and noting that it is "hard to imagine a situation where a plaintiff could not demonstrate that it can supplement its jurisdictional allegations through discovery") (internal citation and quotation marks omitted).

The allegations made in the complaint are sufficient in detail to justify further discovery, should the issue of jurisdiction over Mr. Cherry be insufficiently supported. We expect that further limited discovery will uncover additional evidence that Mr. Cherry transacted business in D.C. It is not disputed that defendant Cherry ran a business in the Central African Republic as alleged in the complaint. In order to do this, Mr. Cherry would necessarily have had to obtain a visa at the Central African Republic's Embassy in Washington, D.C. Using this visa, Mr. Cherry assisted the Central African Republic government in purchasing a C-130 plane, and employing and paying a crew for it. It is also beelived that Mr. Cherry was in regular contact with Ambassador Touaboy in Washington, D.C., by telephone, facsimile, and/or e-mail.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that Defendant Cherry's motion to dismiss be denied.

Dated: January 18, 2007
                                     _____/s/_____
                                       William T. O'Neil (D.C. Bar #426107)
                                       Burke O'Neil LLC
                                       1718 20th Street
                                       Washington, D.C. 20009
                                       Telephone: (202) 232-5504
                                       Facsimile: (202) 232-5513

Daniel L. Abrams
2 Penn Plaza, Suite 1910
New York, New York 10121
Telephone:  (212) 292-5663
Facsimile:  (646) 536-8905

Samuel Z. Yahn
5299 DTC Boulevard, Suite 500
Greenwood Village, CO  80111
Telephone:  (303) 850-7490
Facsimile:  (303) 850-7498

<u>**CERTIFICATE OF SERVICE**</u>

I, William T. O'Neil, do hereby certify that on the 18th day of January 2008, I caused true and correct copies of Plaintiffs' Opposition To Defendant Earl Cherry's Motion to Dismiss to be served electronically via the Court's cm/ecf system and by e-mail upon the following individual at the address indicated:

> J. Stephen Simms, Esq.
> Simms Showers LLP
> Suite 702
> 20 S. Charles Street
> Baltimore, MD 21201

> /s/ William T. O'Neil
> William T. O'Neil